15047

LOCKLAIR v. RAYBOURN

(8 S. E. (2d), 349)

July, 1939.

*Mr. M. W. Seabrook,* for appellant,

*Messrs. Wolfe, Dennis & Eatmon,* for respondent,

March 27, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant appeals from a decree foreclosing a certain purchase money mortgage of real estate executed and delivered by him to the plaintiff on or about May 15, 1936. The mortgage secured a note of the defendant given at the same time, in the sum of $2,000.00, drawing interest.

The defendant excepts upon several grounds. The main contention seems to arise from the disallowance of his counterclaim wherein he claims damages in the sum of two thousand dollars. In support of the counterclaim he introduced evidence purporting to show that he had an opportunity to sell the timber on the mortgaged premises for $1,200.00; that the prospective purchaser employed a timber cruiser to estimate the quantity of timber thereon, but that plaintiff's agent, C. H. Browder, interfered with the cruiser, one Arnold, by telling him that the defendant had bought the land, but had never paid for it, and that "he better mind how he was on it."

The appellant asserts that this alleged interference stopped Arnold from completing the cruise, and that by reason of it the appellant lost the sale of the timber.

The cause was referred to a special Referee, and he concluded that there was a total lack of evidence tending to show that Browder was the agent of the plaintiff in connection with the mortgaged property. Browder denied specifically having made the statement to Arnold, but even if the agency had been shown to exist, and it be accepted as true that he made the statement attributed to him, this lacks much of proving any actionable interference. It is not shown that either Baggett, the prospective purchaser of the timber, or Arnold, the timber cruiser, even mentioned the matter to the defendant. The only reasonable inference to be drawn

from the evidence is that negotiations between Baggett and the defendant for the sale of the timber and certain cross-ties were discontinued because the present foreclosure action had been instituted. Baggett testified that he was an experienced timber broker; that he knew the value of the timber and would pay $1,200.00 for it provided it could be sold free of the lien of the mortgage.

We agree with the finding of the Referee and the conclusion of the lower Court that there is no merit in the asserted counterclaim for damages.

Only one reference was held for the purpose of taking testimony, and the appellant complains that another day should have been set so that he could have obtained the presence of Arnold, who was out of the State. It is said that Arnold, if he had testified, would have confirmed the testimony of Baggett as to the alleged interference with the timber cruiser. The record shows that counsel for the appellant did not even know the name of the witness, Arnold, prior to the day the reference was held, but in any event the defendant got the benefit of what Arnold would have testified to if he had been present. Moreover, the evidence shows that at the time Arnold made his cruise, or attempted to make it, he was accompanied by another person, and no effort at all was made to ascertain the name of that party and to have him to appear in Court.

Under the authority of *Ilderton v. Charleston Consolidated Railway & Lighting Company,* 113 S. C., 91, 101 S. E., 282, there is no merit in the exception raising this point.

Appellant claims that his witness, Russell, was present at the reference, but that prior to the taking of the testimony he had been tampered with by C. H. Browder, the alleged agent of the plaintiff, and induced to leave the Courtroom, thereby depriving the defendant of his evidence. Russell had not been summoned as a witness by the defendant, but voluntarily appeared, and, as already stated, there is no evidence tending to show that Browder was the plaintiff's agent. Browder was present as a witness

for the plaintiff, and, while there is evidence tending to show that he had talked with Russell about the case, there is not the slightest evidence from which the conclusion can be drawn that he persuaded him to leave the Courtroom. Furthermore, the record shows that what Russell was expected to give evidence about, had no relevancy at all to the issues presented by this appeal.

The appellant insists that the complaint should have ■ been dismissed because the note secured by the mortgage was not produced or introduced in evidence, and further that there was no competent evidence of the loss of the note. There is no merit in this contention. While it is true that the note was not produced its loss was sufficiently explained by counsel for the plaintiff. He testified that the note was last in his possession along with the mortgage; that it had become lost or misplaced, and after a diligent search made by him could not be found.

Nor, in our opinion, did the Referee or the lower ■ Court err in allowing a fee of $250.00 to the plaintiff's attorneys for their services in foreclosing the mortgage. The aggregate of the principal and interest due on the mortgage on July 5, 1939, the date of the decree, was over $2,700.00. The mortgage stipulated for attorney's fees amounting to ten per cent. of the amount due. Plaintiff asked for attorney's fees in the sum of $250.00, an amount less than ten per cent. The Referee and the lower Court found this fee to be entirely reasonable in view of the nature of the litigation. After reviewing this record, we concur in this finding.

Error is assigned because the Circuit Court required ■ a cash deposit at the foreclosure sale, and in not allowing credit terms. We think the lower Court was fully justified in requiring a cash deposit from the successful bidder. It was held in *Ex Parte Floyd,* 145 S. C., 364, 142 S. E., 805, 808: "The foreclosure of a mortgage is a proceeding in equity. The terms of sale are within the discretion of the Circuit Judge. It is proper to require the suc-

cessful bidder to make a cash deposit of a part of his bid. 42 C. J., § 1831 ; *Hand v. Railway Co.,* 13 S. C., 467 ; *Tyer v. Milling Co.,* 32 S. C., 598, 10 S. E., 1067 ; *Barnwell v. Marion,* 62 S. C., 446, 40 S. E., 873 ; *Porter v. Realty Co.,* 134 S. C., 34, 131 S. E., 768. Such a deposit is a proper safeguard against spurious bidding upon the one hand and an aid in carrying into effect the terms of sale upon the other."

Appellant has failed to show that a deposit of five per cent. of the amount bid by the successful bidder is an abuse of discretion on the part of the Circuit Judge. Nor has any abuse of discretion been shown in failing to order that the sale be made partly for cash and partly on credit.

It is likewise said that the decree should have provided for the sale of the timber separately for an upset price of $1,200.00 as the lowest bid, and that the land be sold at some subsequent date. It is contended that such method of sale would have been equitable. The statement of this contention carries its own refutation. There is no suggestion in the record that the proceeds from the sale of the timber could or would pay the mortgage indebtedness. Nor was there any evidence as to the value of the land stripped of the timber. The mortgage of the plaintiff constituted a lien not only over the timber, but over both the land and timber, and it would have been repugnant to equity, in the light of the evidence, to have directed any such manner of sale.

It seems to be assumed that the plaintiff, as mortgagee, was in duty bound under the mortgage contract to release the lien of his mortgage over the timber, and then hope for the payment of the balance due from a sale of the land. Of course no such obligation existed. A mortgagee, under established law, has a right to demand and receive the entire amount secured by his mortgage before he can be called upon to satisfy or cancel it. Nor can a mortgagee be compelled to accept a part of his debt and release a corresponding part of the land, unless he has expressly agreed to do so.

A review of the evidence shows: This tract of land was sold by the plaintiff to the defendant on May 15, 1936. No cash was paid. The entire purchase money was secured by the mortgage in question, and the defendant immediately went into possession. More than three years have elapsed, and during that period the defendant has never made a payment on principal or interest, nor has he paid the taxes assessed against the property. He has expended nothing in the way of improvements thereon or in the repair of buildings; but on the other hand he has used the land for his own purposes and collected rents from sub-tenants for the years 1937 and 1938.

The decree of the Circuit Court provided for and fixed a day for the sale of the land described in the complaint. This day has now passed. We affirm the judgment below, and remand the case so that another day may be fixed for the sale of the property, under the terms and provisions heretofore provided by the Circuit Court.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and CARTER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE, concur.