## 11175

### TARLETON ET AL. v. THOMPSON

#### (118 S. E. 421)

1. **MARRIAGE—PRESUMPTION IN FAVOR OF.**—The presumption is in favor of a marriage.

2. **MARRIAGE—EVIDENCE HELD TO SHOW VALID MARRIAGE.**—Testimony of the alleged wife and of a witness who testified that he was present at the ceremony *held* to show that there was a valid marriage.

3. **BASTARDS—CHILDREN BORN IN WEDLOCK PRESUMED LEGITIMATE.**—The presumption is that children born in wedlock are legitimate.

4. **BASTARDS—EVIDENCE HELD NOT TO OVERCOME PRESUMPTION THAT CHILDREN BORN IN WEDLOCK WERE LEGITIMATE.**—Evidence that part of deceased husband's penis had been removed by an operation *held* not to overcome the presumption that children born in wedlock · were legitimate, in view of evidence that they looked like him, and he was fond of them, and conflicting evidence as to whether he could have sexual intercourse.

5. **HOMESTEAD—EVIDENCE HELD TO SHOW THAT THERE WAS NO ABANDONMENT DEFEATING HOMESTEAD EXEMPTION.**—Evidence that deceased husband left his home to secure work, and his wife and daughter remained at home, he visited them, and they visited him *held* to show that there was no abandonment such as would defeat a homestead exemption.

Before SHIPP, J., Darlington, December, 1922. Modified.

In the matter of the estate of L. A. Crowley. Petition by Barzilla Tarleton and others for a homestead exemption out of the personal estate, opposed by John Thompson. From the decree rendered, John Thompson appeals.

The decree of Circuit Judge Shipp referred to in the opinion follows:

This case comes before me on exceptions to the report of the Probate Judge acting as Master. The petitioners,

NOTE: On proof of ceremonial marriage by testimony of eyewitnesses see note in L. R. A., 1915E, 121.

Proof necessary to establish bastardy of child born to a married woman is discussed in note in 36 L. R. A. (N. S.), 225.

claiming to be the widow and children of L. A. Crowley, deceased, filed their petition for a homestead exemption out of the personal estate of the said Crowley. The application was resisted by the respondent, John Thompson, on the grounds, briefly, that at the time of his death L. A. Crowley was not the head of a family in this State; that there was no marriage between the said Crowley and Barzilla Crowley Tarleton; that Crowley was incapable of sexual intercourse, and had been for many years, and could not beget children, and that the petitioners herein claiming to be the children of L. A. Crowley were illegitimate. The Probate Judge, acting as Master, to whom the case was referred, filed a report, which is in the record here, in which he found for the respondent, John Thompson, on all of the issues raised. The petitioners excepted to this report on seven grounds, but, as there are really only three principal questions raised or involved here, there is no need of setting out and considering all of the exceptions.

In his report the Probate Judge makes no direct or positive ruling as to whether or not there was a valid marriage, but I will take up that question first. The presumption is in favor of the marriage, and I find that it is clearly established by the testimony. In addition to the testimony of Barzilla Crowley Tarleton, one of the other witnesses who testified in this case was present at the marriage ceremony. There is other evidence which bears this out, and I find that the Probate Judge was in error in not holding that there was a valid legal marriage between L. A. Crowley and Barzilla Crowley Tarleton.

The next question to be considered is as to whether the Probate Judge erred in holding that the children were illegitimate. Having found that there was a legal marriage, the presumption is that the children born in wedlock are legitimate, and it has been held in this State that this presumption can only be overcome by positive proof of incapacity. *Pooler v. Smith,* 73 S. C., 102; 52 S. E., 967.

It is undisputed that about 20 years ago, after his marriage, L. A. Crowley was operated upon, and a part of his penis removed, and it is contended by the respondent that this operation rendered Crowley incapable of sexual intercourse, and that he could not thereafter beget children. There is the testimony of Dr. Powe, standing alone, to the effect that he had treated Crowley, and that the latter's penis was cut off almost even with his stomach; that erection would lengthen it little, if any; that metal sounds had to be inserted in order for him to urinate; that Crowley was incapable of sexual intercourse, and could not beget children. In view of the other testimony in this case, all that I can say of this is that it is the opinion of Dr. Powe.

As against Dr. Powe's testimony there is the testimony of Dr. Howle, who performed the operation on Crowley, and had treated him afterwards, to the effect that the end of the penis was cut off just behind the head, and that less than half of the penis was removed; that Crowley could have sexual intercourse, and could beget children. Besides the testimony of Dr. Howle, Mrs. Crowley (now Tarleton) says that Crowley was the father of her children. Another witness testified that Crowley told him that he could not get children until after the operation, and jokingly said that he could not get children before the operation because his penis had been too long. This witness testified that Crowley also told him that he could enjoy women, and also that Crowley visited women. Still another witness testified that he had known Crowley for years, and had seen his privates, and that the penis of Crowley was about three inches long. Several witnesses testified that the children, or some of them, resembled Crowley to a marked degree. There is also evidence of the fact that Crowley regarded them and treated them as his children, and was very fond of them.

Now the burden is on him alleging the illegitimacy to prove it by the preponderance of the evidence, and this the

respondent has failed to do. I find, therefore, that the children, named above as petitioners are the legitimate children of L. A. Crowley and his wife, Barzilla Crowley (now Tarleton), and the Probate Judge was in error in holding that these children were illegitimate.

The next question presented is as to the right of the widow and children to claim the homestead exemption. The respondent contends that Mrs. Crowley and her children abandoned L. A. Crowley many years ago, and Mrs. Crowley lived in adultery with another man. The presumption would be against the adultery; but, be that as it may, a consideration of the testimony convinces me that there is no evidence in the entire record of any adultery or adulterous conduct on the part of Mrs. Crowley.

Now, as to the question of abandonment, I am of the opinion that the Probate Judge was in error in holding that there had been an abandonment such as would defeat the right of petitioners to claim the homestead. The testimony of Mrs. Crowley and one of her daughters who testified was to the effect that Crowley left home in search of work. It is undisputed that Crowley worked around at various places. It was testified to by Mrs. Crowley and her daughter that the former and her children stayed at home and managed and ran the farm, and that they visited Crowley and he them. The fact that they visited Crowley and that he visited them is borne out by the testimony of the witnesses, Merriman, Jordan, Freeman, and others, and with regard to this, and the other corroborative evidence, I find that there was no abandonment such as would defeat the homestead exemption. Our Supreme Court recently held that, even though a man and his wife had lived separately for 14 years, living in different counties, and the husband had contributed nothing towards the support of the wife for years, he sometimes visited her and she him, the husband was still the head of the family, and could

claim the homestead exemption. Appeal of *Brookland Bank,* 112 S. C., 400; 100 S. E., 156. In the case at bar, under the evidence here, Mrs. Crowley would have the right to force Crowley to support her, and, this being so, upon Crowley's death, he having been the head of a family, the widow and children are entitled to a homestead exemption out of his estate. I hold, therefore, that the Probate Judge was in error in finding that the petitioners were not entitled to the claim of homestead.

Before these petitioners can claim their homestead exemption, however, there should be paid out of the estate the funeral expenses and expenses of the last illness, and the respondent, John Thompson, should be refunded from said estate the sum of money paid out by him on account of these items, in the sums testified to by him, and for which claim was made. It is ordered, therefore, that the report of the Probate Judge, acting as Master, be, and the same hereby is, reversed in so far as same is not in accordance with this decree, and that the prayer of the petition be granted, as set forth in this decree, after the estate has first reimbursed John Thompson for the money actually paid out by him as the doctor's bills and funeral expenses of the said L. A. Crowley, as testified to by the said John Thompson; and that, after reimbursing the said John Thompson as aforesaid, a homestead in the personal estate of L. A. crowley be appraised and laid off to the petitioners as provided by the laws of this State.

*Messrs. E. C. Dennis* and *F. A. Miller,* for appellant, cite: *Presumption that wife is capable of bearing children:* 4 Wig., Evid., Sec. 2528; 48 L. R. A. (N. S.), 865. *Presumption of legitimacy:* 15 S. C., 421; 18 S. C., 59; 68 S. C., 470; 8 L. R. A., 102; 126 A. S. R., 264. *Nursing in last illness is a preferred claim:* Dud., 337; 23 S. C., 119; 36 S. C., 124; 49 S. C., 55. *As against homestead claim:* 31 S. C., 547.

*Messrs. Pegues & Murray,* for respondent, cite: *Presumption of legitimacy:* 73 S. C., 102. *Widow entitled to homestead:* 112 S. C., 400.

July 18, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Shipp, it is the judgment of this Court that the judgment of the Circuit Court be affirmed as to the legitimacy of the children and allowances of homestead after costs of administration are paid, and as to so much of decree as allows John Thompson to be paid doctor's bills and funeral expenses, and that John Thompson be allowed to prove what was a reasonable charge for taking care of Crowley the last three months of his life; that account to be allowed as expenses of last illness and paid before homestead is set off.

MESSRS. JUSTICES FRASER, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.